UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| XIE DENG CHEN, | ) | Case No. 1:20-CV-00007-SL |
|  | ) |  |
| Plaintiff, | ) | JUDGE SARA E. LIOI |
|  | ) |  |
| -vs- | ) | MAGISTRATE JUDGE |
|  | ) | CARMEN E. HENDERSON |
| WILLIAM T. BARR, Attorney General of the United States, et al., | ) |  |
|  | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) |  |

## I.     Introduction

Petitioner Xie Deng Chen petitions the Court to issue a writ of habeas corpus requiring his release from Immigration and Customs Enforcement ("ICE") detention. I recommend that the Court GRANT his petition and order ICE to administer an individualized bond hearing within 21 days of the date of its order. I also recommend that the Court order Respondents to release Chen from custody if he is not given a bond hearing within those 21 days.

## II.    Procedural History and Background

In February 2000, Chen arrived in the United States as a stowaway. (ECF No. 1 at 4, ¶ 13). Later that month, the then-existing Immigration and Naturalization Service referred his case to an immigration judge ("IJ") under a Form I-863. (ECF No. 1 at 4, ¶ 14). Two months later, Chen attended a master calendar hearing, where he filed for asylum, withholding of removal, and Convention Against Torture ("CAT") protection. (ECF No. 1 at 4, ¶ 15). Then, in June 2000, Chen attended his individualized hearing before the IJ. He withdrew his asylum and withholding-of-removal claims but proceeded with his CAT claim. (ECF No. 1 at 4, ¶ 16). The IJ denied Chen's

1

CAT claim and ordered that he be removed. (ECF No. 1 at 5, ¶ 17). Chen appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's ruling in on October 2, 2003. (ECF No. 1 at 5, ¶ 18). Chen then appealed to the Second Circuit Court of Appeals, which dismissed his petition on October 13, 2004. (ECF No. 8 at 3).

Five years later, Chen and his family moved to Ohio and established a restaurant there. (ECF No. 1 at 5, ¶ 19-20). A decade after that,[1] ICE detained Chen on February 5, 2019 (ECF No. 1 at 5, ¶ 19-20), holding him at the Geauga County Jail in Chardon, Ohio. (ECF No. 1 at 3, ¶¶ 7-8). Chen petitioned the BIA for an emergency stay to reopen his case to again apply for asylum, withholding of removal, and protection under the CAT on February 21. (ECF No. 8 at 3). The BIA stayed his removal on March 7, one day before ICE had planned to remove him. (ECF No. 8 at 3).

Despite the BIA-issued stay, ICE continues to detain Chen at the Geauga County Jail. (ECF No. 1 at 3, ¶¶ 7-8). ICE issued a Decision to Continue Detention on April 26, 2019, finding that Chen was a flight risk. (ECF No. 1 at 5, ¶ 24). Since then, Chen's detainment status "periodically has been reviewed as required by applicable regulations," with "[e]ach of these reviews … result[ing] in a decision to continue his detention." (ECF No. 8 at 3). ICE continues to detain Chen only for immigration-related offenses. ICE has a valid passport for Chen that expires on October 16, 2023. (ECF No. 8 at 3). And to the Court's knowledge, the BIA has not ruled on Chen's motion to reopen, nor has it removed the stay.

Chen petitioned this Court on January 3, 2020, asking that it "grant him a Writ of Habeas Corpus…." (ECF No. 1 at 2, ¶ 4). Chen would order Respondents to "release him or provide him with an individualized bond hearing before an Immigration Judge." (ECF No. 1 at 2, ¶ 4).

---

[1] Neither party explained why ICE or its predecessor did not attempt to remove Chen during these 15 years.

**III.    Jurisdiction**

One who "is in custody in violation of the Constitution or laws or treaties of the United States" may petition for a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). Habeas corpus relief "is 'at its core a remedy for unlawful executive detention.'" *Hamma v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) (quoting *Munaf v. Green*, 553 U.S. 674, 693 (2008)). Federal district courts do not have jurisdiction over all immigration issues. *See, e.g.*, 8 U.S.C. § 1252 (limiting jurisdiction generally for "a final order of removal … [to] only … chapter 158 of Title 28"). And they cannot review "final orders of removal …, even via habeas corpus" petitions. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020). But they have jurisdiction over Section 2241 habeas corpus petitions so long as the petitioner's claim arises out of immigration detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (acknowledging that 8 U.S.C. § 1252 is not a jurisdictional bar unless a petitioner "ask[s] for review of an order of removal; … challeng[es] the decision to detain [him] in the first place or to seek removal; [or] … challeng[es] any part of the process by which their removability will be determined").

Because Chen challenges the duration of his detention as unreasonable under 8 U.S.C. § 1226 and 8 U.S.C. § 1231 (ECF No. 1 at 6, ¶ 31), but does not challenge the merits of his removal order here, the Court has jurisdiction over his habeas corpus petition.

**IV.    Analysis**

Chen's circumstance is as common as it is unique. On the one hand, Chen appeared before an IJ, who denied his petition to remain in the United States, then appealed the IJ's decision to the BIA, who affirmed the IJ's ruling. (ECF No. 8 at 2-3). On the other hand, ICE did not remove Chen, even after he started a business. (ECF No. 1 at 5, ¶ 19). When ICE finally detained him and began to process his removal in 2019, Chen petitioned the BIA to reopen his asylum case and was

3

granted a stay. (ECF No. 1 at Exhibit A). Yet, ICE continues to detain him under 8 U.S.C. § 1231, asserting that "there remains a significant likelihood of [Chen's] removal in the reasonably foreseeable future." (ECF No. 8 at 5-6).

Chen's petition—and the Respondents' opposition to it—turns on whether the BIA's March 2019 stay altered the administrative finality of his removal order. If it did not, then there is an administratively final removal order for Chen under Section 1231. In that case, ICE could continue to detain him beyond the 90-day removal period under 8 U.S.C. § 1231(a)(6), since it has determined that Chen is a risk to the community or unlikely to comply with the order of removal. (ECF No. 1 at 5, ¶ 24). But if the stay altered Chen's removal order from administratively final to not administratively final, then ICE cannot lawfully detain him under Section 1231. Rather, it may lawfully detain Chen only under Section 1226(a) while the stay is in effect.

### A. Detention Under Section 1231

Section 1231 authorizes ICE to detain aliens whose removal periods have begun. 8 U.S.C. § 1231(a)(1)(A). ICE shall remove these aliens within 90 days of when the period begins. *Id.* The period is triggered in one of three ways: (i) the date when the order becomes administratively final; (ii) the date of the appeals court's final order (if any); or (iii) the date when the alien is released from detention or confinement (if so detained or confined). 8 U.S.C. § 1231(a)(1)(B). As relevant here, an IJ's removal order becomes final when the BIA dismisses the detainee's appeal. 8 C.F.R. § 1241.1(a). Thus, Chen's removal order became administratively final on October 2, 2003, when the BIA affirmed the IJ's ruling. (ECF No. 1 at 5, ¶ 28).

The Court concludes, however, that Chen's final order was no longer administratively final when the BIA—the highest administrative body to which a detainee can appeal—stayed Chen's removal to consider his motion to reopen. Motions to reopen for asylum, withholding of removal,

and protection under the CAT are not limited by time or number; rather, they concern changed country conditions. BIA PRACTICE MANUAL § 6.3(b) (2020). Such motions stay a removal order only if the BIA so orders it. *Id.* And the stay "last[s] until … the [BIA] renders a final decision on the merits of the … motion to reopen…." *Id.* at § 6.3(f). They are administrative actions that necessarily continue the administrative-review process.

The change to the administrative status is a key difference between Section 1231 detention and Section 1226 detention: "[Section 1231] grants authority to detain aliens who are subject to final removal orders because they have not moved to reopen their immigration proceedings or have not prevailed in a motion to reopen their proceedings… [Section 1226] grants authority to detain certain aliens who have succeeded in having their removal orders reopened (and are not subject to a final removal order and detention authority under Section 1231)…." *Hamma*, 912 F.3d at 873 (emphasis added) (internal citations omitted).

Judicial stays are analogous. If, for example, the Sixth Circuit stayed a petitioner's case to review the merits of the IJ's or the BIA's removal decision, then ICE could not detain the petitioner under Section 1231 while the stay was in effect. *See, e.g.*, *Cuello v. Adducci*, No. 10–13641, 2010 WL 4226688 (E.D. Mich. Oct. 21, 2010). In *Cuello*, a Section 1231 detainee with an administratively final removal order petitioned the Sixth Circuit for judicial review and a stay, which it granted. *Id.* at *2. When ICE continued detaining the petitioner after the stay was issued, the district court, on habeas corpus review, concluded that the Sixth Circuit had not issued a final order on petitioner's stayed removal order; thus, "under the plain language of [the judicial-stay subsection], [the p]etitioner's removal period ha[d] not yet begun," and the petitioner could not lawfully be detained under Section 1231. *Id.* at *3. Similarly, in *Bejjani v. I.N.S.*, the Sixth Circuit held that Section 1231's removal period begins only after the staying court has issued its final

order. *Bejjani v. I.N.S.*, 271 F.3d 670, 689 (6th Cir. 2001), *abrogated on other grounds by Fernandez Varga v. Gonzales*, 548 U.S. 30 (2006).

The Court notes Respondents' argument under Section 1231 that a habeas corpus petitioner must demonstrate that "there is good reason to believe [that] there is no significant likelihood of his removal in the reasonably foreseeable future." (ECF No. 8 at 6 (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). The reasonably-foreseeable-future standard, though, applies only to Section 1231 detention, which the Respondents have misapplied here. Similarly, Respondents' contention that Chen "actually has caused his removal to be delayed by filing for a stay before the BIA"—and, thus, controls the clock—is not persuasive. (ECF No. 8 at 8). Their case in support, *Pelich v. I.N.S.*, concerned detention under Section 1231. *Pelich v. I.N.S.*, 329 F.3d 1057, 1060-61 (9th Cir. 2003). It was also clear that Pelich was "responsible for his own plight" for reasons other than seeking legitimate administrative or judicial review, for example by "refus[ing] to fill out a Polish passport application, which directly impede[d] Poland's ability to" repatriate him and providing "conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthday[,] and his nationality." *Id.* at 1059. Respondents make no such allegations here. Although some courts might hold against a petitioner who resorts to legitimate judicial or administrative review (*e.g. Doherty v. Thornburgh*, 943 F.2d 204, 211 (2nd Cir. 1991) (stating that "[a]lthough … [a dilatory] litigation strategy is perfectly permissible, we hold that Doherty may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process")), the Sixth Circuit follows the plain-language meaning of Section 1231(a)(1) and (2). *Cuello*, 2010 WL 4226688, at *3; *Bejjani*, 271 F.3d at 689.

6

Because the BIA stayed Chen's removal order to consider his motion to reopen, Chen is not subject to an administratively final removal order, and ICE cannot hold Chen under Section 1231.

**B.     Detention and Due Process Under Section 1226(a)**

Instead, ICE can detain Chen only under Section 1226(a).[2] Chen's petition argues that his detention, even under Section 1226, violates his "due process rights under the United States Constitution." (ECF No. 1 at 6, ¶ 30). The Fifth Amendment's due process clause, which "'applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,' […] 'forbids the Government to deprive any person ... of liberty ... without due process of law.'" *Cuello*, 2010 WL 4226688, at *5 (quoting *Zadvydas*, 533 U.S. at 690). Because Section 1226(a) has its own procedural scheme, the Court must determine what process he is owed under that section.

Section 1226(a) controls ICE's detainment of an alien who has been "arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). It authorizes the Attorney General to either: (1) continue detaining the arrested alien; or (2) release him on either bond or conditional parole. 8 U.S.C. §§ 1226(a)(1), (2). Through its regulations, Section 1226(a) mandates that the detainee "receive [a] bond hearing[] at the outset of detention." *Jennings*, 138 S. Ct. at 847 (citing 8 C.F.R. § 236.1(d)(1) and § 1236.1(d)(1), both of which call for "an initial custody determination by the district director, including the setting of a bond" under 8 C.F.R. § 1003.19)). That is the standard manner by which a detainee receives an

---

[2] Neither party argues that Chen would be subject to 8 U.S.C. § 1226(c), which applies to criminal-alien detention. Rather, Chen is only a stowaway under 8 U.S.C. § 1101(a)(49), and, as such, is ineligible under 8 U.S.C. § 1225(a)(2). (ECF No. 1 at 4, ¶ 13; ECF No. 8 at 2).

individualized detention determination—which is implicitly required by Section 1226(a)'s detain-or-release provision. *Cuello*, 2010 WL 4226688, at *5 (citing *Contant v. Holder*, 352 F. App'x 692, 695 (3rd Cir. 2009)). And a detainee "'may seek review of this decision by an Immigration Judge.'" *Cuello*, 2010 WL 4226688, at *5 (quoting *Pisciotta v. Ashcroft*, 311 F. Supp. 2d 445, 449 (D. N.J. 2004) and *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1074 (N.D. Cal. 2004)).

Chen is entitled to that due process. Chen did not receive a bond hearing at the start of his 2019 detention because he was detained under Section 1231. But when the BIA stayed his case, he did not receive a bond hearing then, either. Instead, ICE reviewed Chen's case in April 2019 and "issued a Decision to Continue Detention" because it had determined (it appears, without his input) that Chen was unlikely to comply with the order of removal. (ECF No. 1 at 5, ¶ 24). Although ICE periodically reviews that decision (ECF No. 8 at 3), it is still insufficient due process. ICE is permitted under Section 1231(a)(6) to issue a Decision to Continue Detention, but Section 1226(a) has a different mechanism for making that determination: an initial custody determination by the district director and a bond hearing before an IJ.

Finally, Respondents mention that Chen could receive a derivative "U" visa in the future. (ECF No. 8 at 8-9). Similarly, Chen asserts that he is not a danger to the community; rather, he has "strong ties to his local community, not only through his business, but also with his involvement at his church." (ECF No. 1 at 6, ¶¶ 32-33). Although these facts may be relevant to a bond hearing or initial custody determination, they are not relevant here because the Attorney General, through DHS, determines whether to release a detainee. 8 U.S.C. § 1226(a). The issue here is habeas corpus relief, nothing more.

## V. Recommendation

For these reasons, I recommend that Chen's Petition for Writ of Habeas Corpus be GRANTED to the extent that the Court REMANDS this matter to the Detroit Immigration Court so that an IJ can administer an individualized bond hearing within 21 days of the date of the Court's order. I also recommend that the Court order Respondents to release Chen from custody if he is not given a bond hearing within those 21 days.

DATED: 9/8/2020

*CarmenHenderson*

Carmen E. Henderson
United States Magistrate Judge

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); see also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).